UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **TIMOTHY STEWART,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **2:19-cv-00955-AKK** |
| **CITY OF HOMEWOOD,** | ) | |
| **ALABAMA, ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises from Timothy Stewart's encounter with Homewood City police officers one early morning, during which Officers Rodney Adams and Nicholas Altobella allegedly handcuffed Stewart, beat him, kicked him in the head, tased him until puss oozed from his back, dragged him on the pavement until his flesh ripped from his arms and his toenails tore from his feet, and taunted him with racial slurs. Stewart alleges claims, pursuant to 42 U.S.C. § 1983, for excessive force and violation of due process by Officers Adams and Altobella (Count I), supervisory liability as to unnamed defendants (Count III), and failure to intervene (Count IV). *See* doc. 1. Stewart also pursues state law claims for negligent training, supervision, and retention against the City of Homewood and Chief Tim Ross (Count II),

negligence against Officers Adams and Altobella (Count V), and intentional torts of assault and battery and infliction of emotional distress against all defendants (Count VI). *Id*. The Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 8(a) and 12(b)(6). Doc. 6. The motion is fully briefed, docs. 7, 11, and 12, and ripe for review. For the reasons stated more fully below, the motion is due to be granted as to the excessive force and due process claims against Officers Adams and Altobella in their official capacities (Count I), the negligent training, supervision, and retention claims against Chief Ross and the City of Homewood (Count II), the § 1983 supervisory liability claim against Chief Ross and unnamed defendants (Count III), the § 1983 failure to intervene claim against Chief Ross and the City of Homewood (Count IV), and the infliction of emotional distress claims against Officers Adams and Altobella and Chief Ross and the City of Homewood as well as the assault and battery claims against Chief Ross and the City of Homewood (Count VI). The motion is due to be denied in all other respects.

**I.     STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND[1]

Stewart left his motel room on the early morning at issue and accepted a ride from a passing car to a local convenience store. Doc. 1 at 2-3. Shortly thereafter, Officers Adams and Altobella of the City of Homewood Police Department detained and handcuffed Stewart and then proceeded to beat him and kick him in the head. *Id*. at 4. The officers repeatedly used a taser on Stewart until puss oozed from his back, *id*. at 5, and then dragged Stewart across asphalt pavement, causing "flesh [to be] ripped from his arms and toenails . . . [to be] ripped from his feet," *id*. at 4. The officers also directed racial slurs at Stewart and destroyed his cell phone. *Id*. at 5. No officer intervened to stop the attack or offer medical assistance. *Id.*

## III. ANALYSIS

As an initial matter, the court notes that Stewart fails to address the Defendants' arguments against Count II, Count III, and Count IV in his response to the motion to dismiss. *See* doc. 12. Consequently, Stewart has abandoned these claims, and they are "due to be dismissed on those grounds alone." *See e.g.*, *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014) (citing *Fischer v. Fed.*

---

[1] Stewart's allegations are presumed true for purposes of Fed. R. Civ. P. 12(b)(6). As such, the facts are taken from the Complaint, doc. 1. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.") (citations and quotation marks omitted). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Iqbal*, 556 U.S. at 662.

*Bureau of Prisons*, 349 Fed.Appx. 372, 375 n. 2 (11th Cir. 2009)). With the exception of the failure to intervene claims (Count IV) against Officers Adams and Altobella, the court provides alternative grounds for dismissal of these abandoned claims below, beginning in Section B with the claims against Chief Ross in Section B, followed by the claims against the City in Section C.

### A. Claims against Officers Rodney Adams and Nicholas Altobella (Counts I, IV, V, VI)

Stewart asserts § 1983 claims against Officers Adams and Altobella for violations of the Fourth Amendment[2] by subjecting him to excessive force (Count I) and failing to intervene (Count IV),[3] and state law claims for negligence (Count V) and assault and battery and infliction of emotional distress (Count VI). *See* doc. 1. Defendants contend that Stewart has failed to allege sufficient facts on each of his claims, or alternatively, that Officers Adams and Altobella are entitled to qualified immunity. *See* doc. 7. The court will address the immunity argument first before

---

[2] Stewart claims the Defendants violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights to be free from excessive force and cruel and unusual punishment. Doc. 1 at 1. However, based on the facts he alleges, Stewart's § 1983 claims are cognizable only under the Fourth Amendment.

[3] Stewart does not specify whether his § 1983 claims are against Officers Adams and Altobella in their individual or official capacity, or both. To the extent Stewart asserts claims against the officers in their official capacity, these claims fail. "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly[.]" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citations omitted). Adams and Altobella are municipal officers of the City of Homewood, and any claim against them in their official capacities is tantamount to a claim against the City. Therefore, the official capacity claims, if any, against these defendants are due to be dismissed.

turning to the merits of each claim.

### i. Qualified Immunity

"[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights." *Oliver v. Fiorini*, 586 F.3d 898, 904 (11th Cir. 2009) (citations omitted). Immunity allows officials to carry out discretionary duties without fear of liability and harassing litigation. *Id.* (citations omitted). Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law," but applies only to officers acting within their official authority. *See id.* at 904-05. To assert qualified immunity, a governmental official must first establish that he was acting within his discretionary authority. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). Discretionary authority includes "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (citation and quotation marks omitted). Here, Adams and Altobella, as police officers of the City of Homewood, had both the authority and the duty to make arrests. *See, e.g. Ex Parte City of Montgomery*, 758 So. 2d 565, 570 (Ala. 1999) (holding officers are entitled to discretionary-function immunity when exercising their judgment on whether to make an arrest). And, Stewart does not dispute that these officers were acting within

6

their discretionary authority by arresting him. *See* doc. 1. Therefore, the Defendants have satisfied this prong of the analysis.

Once discretionary authority is established, a court is "obliged to grant qualified immunity to a law enforcement officer unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident." *Pearson v. Callahan*, —— U.S. ——, 129 S. Ct. 808, 815-16, 818 (2009). Thus, to survive the motion to dismiss, Stewart must present a plausible claim that a constitutional violation occurred and that the two officers' conduct violated clearly established law. *See Iqbal*, 556 U.S. at 678.

### ii. Excessive Force and Violation of Due Process (Count I)

With respect to Count I, Stewart has alleged sufficient facts to plead a plausible claim of a constitutional violation. Allegedly, Officers Adams and Altobella "detained [him], . . . handcuffed [him], beat [him] while in handcuffs, and kicked [him] repeatedly in the head . . . then dragged [him] along the asphalt pavement until the flesh was ripped from his arms and toenails were ripped from his feet . . . [and] tased [him] excessively to the point that puss began oozing from his back" while "taunt[ing him] with racial slurs." *See* doc. 1 at 4-5. Viewed in the light most favorable to Stewart, these allegations are sufficient to "show that the officer[s] violated a constitutional right." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156

(11th Cir. 2005).

And, "[i]f such a violation occurred, then [the court] must determine if that right was clearly established at the time of the incident." *Id.* It is settled law that police officers cannot use force that is "wholly unnecessary to any legitimate law enforcement purpose." *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002); *see also Glasscox v. City of Argo*, 903 F.3d 1207, 1214 (11th Cir. 2018) (repeated use of a taser on an incapacitated arrestee presented a genuine issue of material fact as to excessive force); *Slicker v. Jackson*, 215 F.3d 1225, 1227 (11th Cir.2002) (kicking an arrestee who is already in handcuffs violates the Fourth Amendment). More specific to here, the Fourth Amendment prohibits the use of excessive force in the course of an arrest. *Huebner v. Bradshaw*, 935 F.3d 1183, 1190 (11th Cir. 2019). Therefore, drawing all reasonable inferences in Stewart's favor, *see Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010), and taking his allegations as true, the court finds that Stewart has alleged a plausible violation of a clearly established constitutional right, and the motion to dismiss the excessive force claim against the officers in their individual capacities is due to be denied.

### iii. Failure to Intervene (Count IV)

Stewart pleads also a claim for failure to intervene against the officers. A police officer is liable under § 1983 if he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence."

*Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). For this liability to attach, an officer must be both "in a position to intervene and fail to do so." *Id.* (citations and quotation marks omitted). Here, Stewart alleges Officers Adams and Altobella "had a duty to intervene when they saw illegal conduct taking place in connection with the handcuffing, dragging, excessive beating, and failure to obtain medical care for [him]." Doc. 1 at 8. Allegedly, rather than intervene to stop each other, both officers "detained, tased, handcuffed, beat while in handcuffs, and kicked . . . Stewart." *See* doc. 1 at 4. Again, viewing the facts in the light most favorable to Stewart, Stewart has plausibly pleaded claims that both officers were in the position to, but failed to stop the assault. Therefore, as to the two officers, the failure to intervene claim survives.

### iv. State Law Claims

Defendants have moved to dismiss the negligence claims, doc. 1 at 9, and intentional torts claims, *id*. at 9-10, Counts V and VI respectively, against the officers on state-agent immunity grounds. Doc. 7 at 11. Alabama Code § 6-5-338(a) affords municipal police officers immunity from "tort liability arising out of [their] conduct in the performance of any discretionary function within the line and scope of [their] law enforcement duties." But, "[p]eace officers are not entitled to absolute immunity under § 6-5-338(a); rather, immunity from tort liability under § 6-5-338(a) is withheld if an officer acts with willful or malicious intent or in bad faith." *Ex parte*

9

*City of Tuskegee*, 932 So. 2d 895, 906-07 (Ala. 2005) (citations and quotation marks omitted). Under the test enumerated in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), "[Adams and/or Altobella] initially bear[] the burden of demonstrating that [they were] acting in a function that would entitle [them] to immunity." *Brown v. City of Huntsville, Alabama*, 608 F.3d 724, 741 (11th Cir. 2010) (citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)). "If [defendants] makes such a showing, the burden then shifts [to Stewart] to show that [Adams and Altobella] acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority." *Ex parte Estate of Reynolds*, 946 So. 2d at 452.

Applying this framework, "[a]s . . . police officer[s], [Adams and Altobella] qualif[y] as a peace officer[s] for purposes of [discretionary-function immunity]," *Borders v. City of Huntsville*, 875 So. 2d 1168, 1178 (Ala. 2003), and were "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." *Ex parte Cranman*, 792 So. 2d at 405. However, for the reasons stated below, their motion fails in light of Stewart's contention that they acted willfully or with malicious intent.

### 1. Negligence (Count V)

In Count V, Stewart claims Officers Adams and Altobella "negligently failed to provide for the safety, security and protection . . . by failing to comply with the

City's own rules of conduct as it related to the use of force . . . [which] prohibited the use of excessive force against handcuffed and restrained individuals." Doc. 1 at 9. Generally, allegations of negligence are not sufficient to overcome state-agent immunity. *See Ex parte City of Tuskegee*, 932 So. 2d at 906; *see also Stephens v. City of Butler, Ala.*, 509 F. Supp. 2d 1098 (S.D. Ala. 2007) (finding an officer was immune from allegations of negligent acts under Alabama state-agent immunity law). However, an officer is not entitled to immunity from an allegation of negligence if he "fail[s] to discharge [the arrest] pursuant to detailed rules or regulations, such as those stated on a checklist." *Ex Parte Butts*, 775 So. 2d 173, 178 (Ala. 2000). Relevant here, Stewart outlines the City's rules of conduct relating to use of force against restrained individuals, doc. 1 at 9, and pleads that the two officers violated these rules. These allegations are sufficient to plead a plausible claim that Officers Adams and Altobella failed to follow the City's rules and regulations and therefore are not entitled to dismissal of Stewart's negligence claim on state-agent immunity grounds.

### 2. Intentional Torts (Count VI)

In Count VI, Stewart pleads claims for assault and battery and infliction of emotional distress against Officers Adams and Altobella. Doc. 1 at 9-10. "In making an arrest, a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest." *Franklin v. City of*

*Huntsville*, 670 So. 2d 848, 852-53 (Ala. 1995). For the same reasons outlined with respect to the § 1983 excessive force claim, Stewart's allegations that the officers assaulted him while he was handcuffed are sufficient to plead a viable claim for assault and battery. To overcome the officers' assertion of state-agent immunity, however, Stewart must also plausibly allege that Adams and Altobella "acted willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority." *Ex parte Estate of Reynolds*, 946 So. 2d at 452. Stewart has satisfied this requirement through his allegations that the officers beat, kicked, repeatedly tased, and dragged him while handcuffed across asphalt until his toenails scraped from his feet. Doc. 1 at 4-5. Therefore, the motion to dismiss the assault and battery claim against the officers is due to be denied.

The motion is due to be granted however with respect to the intentional infliction of emotional distress claims against the officers.[4] Alabama law constrains the circumstances in which a plaintiff may recover for intentional infliction of emotional distress, or "outrage," to three categories: (1) wrongful conduct in the context of a family burial, (2) insurance agents coercing their clients to settle claims, and (3) egregious sexual harassment. *Exford v. City of Montgomery*, 887 F. Supp.

---

[4] Though Stewart mentions "negligent infliction of emotional distress," doc. 1 at 9, the addition of the word "negligent" is mere legal boilerplate language by Stewart that has no relevance to the claim he seeks to make in Count VI, which he entitles "Intentional Torts." *Id.* Therefore, the court will treat his infliction of emotional distress claim as one of *intentional* infliction, not *negligent* infliction.

12

2d 1210, 1230 (M.D. Ala. 2012). While Stewart's allegations, if true, would shock the average citizen, the Alabama Supreme Court has not recognized a claim of outrage in the context of excessive force by law enforcement. Therefore, the motion to dismiss the outrage claim is due to be granted.

### B. Claims against Chief Tim Ross (Counts II, III, IV, and VI)

As outlined fully below, Stewart's allegations against Chief Ross consist primarily of boilerplate language and lack any specific factual allegations. *See* doc. 1. Such pleadings are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. In fact, many of Stewart's claims are not cognizable under established precedent, and pleading them runs afoul of Federal Rule of Civil Procedure 11.

#### i. Negligent Training, Supervision, and Retention (Count II)

In Count I, Stewart pleads a claim against Chief Ross for negligent training, supervision, and retention. Doc. 1 at 6-7. But, "no such cause of action exists under Alabama law." *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258 (M.D. Ala. 2010).[5] Therefore, as to Chief Ross, Count II is due to be dismissed.

#### ii. Supervisory Liability as to Unnamed Defendants (Count III)

Stewart also pleads a §1983 claim against Chief Ross and unnamed

---

[5] *See also Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001) (finding plaintiff failed to show Alabama law recognizes any cause of action against supervisors for negligent supervision or training of subordinates); *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1058 (holding a police chief could not be held liable for negligent training or supervision because Alabama law does not contemplate the tort as a cause of action).

defendants under the theory of supervisory liability. But, supervisors cannot be held vicariously liable for the constitutional violations of their subordinates. *Piazza v. Jefferson County, Alabama*, 923 F.3d 947, 957 (11th Cir. 2019). Rather, supervisory liability arises only when the plaintiff alleges the supervisor "personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013). To establish this causal connection, the plaintiff must meet an "extremely rigorous" standard by alleging one of the following: (1) that the supervisor failed to correct the alleged deprivation despite having notice of the need for such a correction based on "a history of widespread abuse," (2) that the supervisor's "custom or policy results in deliberate indifference to constitutional rights," or (3) facts supporting "an inference that the supervisor directed the subordinates to act unlawfully" or (4) facts supporting an inference that the supervisor failed to stop such actions despite knowing they would result. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted). Stewart failed to meet this pleading standard.

A review of the complaint shows that Stewart claims unnamed defendants "violated their supervisory duties" to monitor and control Officers Adams and Altobella or care for Stewart, alleging these unnamed defendants were supervisors who "participat[ed] in and/or order[ed]" the alleged conduct and "failed to limit the

attack." Doc. 1 at 7-8. However, Stewart fails to identify these unnamed defendants, and offers only a vague claim that "upon information and belief, among the identified Defendant Officer[s] . . . were supervisors, like Defendant Chief Ross who was assigned to supervise and control" Adams and Altobella. *Id*. Stewart alleges no facts to support his contention that these supervisors "participat[ed] in and/or order[ed]" the incident, *see id*, nor does he specifically allege that Chief Ross or any of the unnamed supervisors were even present during the incident, *id*. at 4-5.[6] But, these facts are insufficient to make a claim that Chief Ross's or any other supervisor's conduct caused a constitutional violation. And, Stewart has pleaded no facts to indicate that Chief Ross or any other unnamed supervisor was on notice of a need to correct a constitutional violation, that there was a custom or policy resulting in deliberate indifference to constitutional rights, or that someone else directed Officers Adams and Altobella to act unlawfully or knew they would do so and failed to stop them. *See generally* doc. 1. Because Stewart's allegations regarding supervisory liability are generalized and conclusory, the motion to dismiss the supervisory liability claim is due to be granted.

### iii. Failure to Intervene (Count IV)

Stewart also pleads a failure to intervene claim against Chief Ross, which is

---

[6] Stewart pleads only that he was "confronted and assaulted by *at least* two uniformed officers" and that "at all relevant times, Defendant Chief Ross was the commanding officer . . . and responsible for the actions and/or omissions of the aforementioned police officers."

15

premised on the Chief's purported failure to stop Officers Adams and Altobella from using excessive force against Stewart. "[I]n order for an officer to be liable for failing to stop police brutality, the officer must be in a position to intervene." *Ensley v. Soper,* 142 F.3d 1402, 1407 (11th Cir. 1998). Rather than pleading specific contentions, Stewart pleads instead a generalized contention that "[e]ach of the Defendants had a duty to intervene when they saw illegal conduct taking place" and "[their] failure to stop the attack and provide medical care violated the Defendants' duty to intervene." Doc. 1 at 8. Critically, Stewart does not allege Chief Ross was present at the scene or had the requisite notice to stop the alleged use of excessive force. *See generally* doc. 1. Therefore, the motion to dismiss the failure to intervene claim against Chief Ross is due to be granted.

### iv. Intentional Torts (Count VI)

Stewart also pleads claims of intentional torts against Chief Ross: "As a result of the Defendants' actions, . . . the Plaintiff was wrongfully assaulted and battered . . . These actions also resulted in the intentional or negligent infliction of emotional distress." Doc. 1 at 9. Noticeably absent are any specific facts indicating Chief Ross's actions contributed to the intentional torts. In fact, Stewart does not even mention Chief Ross. *See id.* This pleading is insufficient to state a claim against Chief Ross, *see Iqbal*, 556 U.S. at 678, and the motion to dismiss is due to be granted.

### C. Claims against the City of Homewood (Counts I, II, IV, and VI)

Stewart pleads a claim under § 1983 against the City for excessive force and failure to intervene, and state law tort claims of negligent training, supervision, and retention, assault and battery, and infliction of emotional distress. *See* doc. 1.

#### i. Excessive Force (Count I)

A municipality cannot be held vicariously liable for its employee's unconstitutional conduct under the theory of respondeat superior. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). Liability attaches instead under § 1983 only when "execution of a government's policy or custom . . . inflicts the injury." *Id.* at 694. A plaintiff making claims against a city for the conduct of its police officers must establish the officers acted pursuant to a city policy or custom. *Griffin v. City of Opa–Loka,* 261 F.3d 1295, 1307 (11th Cir.2001). The plaintiff may do so by pleading specific facts that "identify either (1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city] shown through repeated acts of a final policy maker for the [city]." *Grech v. Clayton County,* 335 F.3d 1326, 1329 (11th Cir. 2003).

The complaint does not allege that Officers Adams and Altobella acted pursuant to a City of Homewood policy or custom. *See generally* doc. 1. In fact, the only specific factual mention of a custom or policy discusses the City's guidelines for use of force against restrained individuals, which are designed to prevent the

excessive force at issue in this case. *Id.* at 9. Other than this specific reference, Stewart's claims against the City are replete with conclusory allegations.[7] The failure to "identify any policy or custom that caused a constitutional violation" dooms Stewart's attempt to hold the City liable for the officers' alleged use of excessive force.[8] *Harvey v. City of Stuart,* 296 Fed. App'x. 824, 825 (11th Cir. 2008) (holding that an arrestee's claims against a city for its officers' actions were not cognizable because he did not allege the officers violated a municipal custom or policy); *see also Grider v. Cook,* 522 Fed. App'x 544, 547–48 (11th Cir. 2013). Accordingly, the motion to dismiss the excessive force claim against the City is due to be granted.

### ii. Negligent Training, Supervision, and Retention (Count II)

Stewart also pleads a claim against the City for negligent training, supervision, and retention. But, no Alabama court has recognized as legally cognizable a claim against a municipality for a supervisor's negligent training or supervision. *Borton*, 734 F. Supp. 2d at 1258. And, because Stewart's claim against the City is contingent

---

[7] *See* doc. 1 at 4 ("[T]he actions involved in this case are the result of the practices, policies, and/or customs of Defendant City of Homewood employees . . . Defendants were deliberately indifferent to Timothy Stewart's constitutional rights and physical welfare").

[8] In his response to the motion to dismiss, Stewart attempts to overcome the dearth of factual allegations by citing a 2012 case that indicated the City of Homewood had "permitted, encouraged, and ratified a pattern and practice of misconduct, including the use of excessive force." Doc. 11 at 5. The court's review is limited to the four corners of the pleadings, *see Travaglio v. American Exp. Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013), and a party cannot amend a complaint through arguments or contentions in a brief.

on Chief Ross's liability for the same tort, *see Voyager Ins. Cos. v. Whitson*, 867 So.2d 1065, 1073 (Ala. 2003), in light of Stewart's failure to state such a claim against Chief Ross, *see supra* at 14, the City's motion is also due to be granted.

### iii. Failure to Intervene (Count IV)

To the extent Stewart is pleading a claim against the City for failure to intervene, this claim fails.[9] A municipality may be liable in a failure to intervene claim only if a member of its police force fails to intervene *and* this failure is due to a municipal custom or policy. *See Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). Therefore, in the absence of any contention regarding a custom or policy, the failure to intervene claim against the City is due to be dismissed.

### iv. Intentional Torts (Count VI)

To the extent Stewart pleads an intentional tort claim against the City, Alabama law prohibits such claims against municipalities. *Town of Loxley v. Coleman*, 720 So. 2d 907, 909 (Ala. 1998) (holding Alabama Code § 11-47-190 "exclude[s] liability for wanton misconduct" attributable to a city within Alabama's boundaries); *see, e.g.*, *Waters v. City of Geneva*, 47 F. Supp. 3d 1324 (M.D. Ala. 2014); *Walker v. City of Huntsville*, 62 So. 3d 474 (Ala. 2010). Therefore, the assault and battery and intentional infliction of emotional distress claims against the City

---

[9] The complaint makes no specific mention to the City, alleging only that all defendants failed "to stop the attack and provide medical care[,] violat[ing] [their] duty to intervene and put a stop to the unconstitutional acts taking place." Doc. 1 at 8.

19

are due to be dismissed.

## IV.　CONCLUSION AND ORDER

For the reasons stated above, the Defendants' Motion to Dismiss, doc. 6, is **GRANTED** solely as to Count I against Officers Adams and Altobella in their official capacities, Count II against Chief Ross and the City of Homewood, Count III against Chief Ross and unnamed defendants, Count IV against Chief Ross and the City of Homewood, and Count VI against Officers Adams and Altobella for infliction of emotional distress and against Chief Ross and the City of Homewood in its entirety. In all other respects, the motion is **DENIED**. As such, the remaining claims are the § 1983 excessive force and due process (Count I) and the failure to intervene (Count IV) claims against Adams and Altobella in their individual capacities, and the assault and battery claims (Count VI) against Adams and Altobella. As to the remaining claims, Adams and Altobella's answers are due by November 22, 2019. The parties are **DIRECTED** to meet and confer and submit by December 22, 2019 a proposed scheduling order that has this case ready for trial in December 2020.

**DONE** the 4th day of November, 2019.

						_____
						**ABDUL K. KALLON**
						UNITED STATES DISTRICT JUDGE